UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
GULF OIL LIMITED PARTNERSHIP,

              Plaintiff,

          -against-

HALIS SEMERCI and HALUK SEMERCI,
d/b/a SEMCO OIL INDUSTRY; HALIS
SEMERCI; HALUK SEMERCI; and
SEMCO OIL INDUSTRY, LTD.,

              Defendants.
----------------------------------------------------------X

**OPINION & ORDER**
**CV-12-4731 (SJF)(WDW)**

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★ JAN 3 0 2013 ★

LONG ISLAND OFFICE

FEUERSTEIN, J.

I.    Introduction

On September 21, 2012, plaintiff Gulf Oil Limited Partnership ("plaintiff") filed: (1) a complaint against defendants Halis Semerci and Haluk Semerci, individually and doing business as Semco Oil Industry, and Semco Oil Industry, Ltd. (collectively, "defendants"), pursuant to the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801, *et seq.*, and this Court's diversity jurisdiction under 28 U.S.C. § 1332(a)(2), seeking, *inter alia*, (a) judgment declaring that plaintiff is entitled (i) to terminate the parties' franchise relationship and (ii) to immediate possession, custody and control of the premises located at 401 Medford Avenue, Patchogue, New York 11772 ("the subject premises"), (b) preliminary and permanent injunctions requiring defendants to immediately (i) vacate and surrender the subject premises to plaintiff and to prevent defendants from re-entering the premises, (ii) return all of plaintiff's property and fixtures at the subject premises to plaintiff, and (iii) remove their personal property from the subject premises

1

without harm to the subject premises, and (c) to recover damages for breach of contract and breach of guaranty; and (2) an application pursuant to Rule 65 of the Federal Rules of Civil Procedure seeking a preliminary injunction (a) requiring defendants (i) to immediately vacate and surrender possession of the subject premises, and all property located thereon, to plaintiff, (ii) to return all of plaintiff's equipment, fixtures and other property at the subject premises to plaintiff and (iii) to remove their personal property from the subject premises without harm to the subject premises, and (b) prohibiting defendants from reentering the subject premises. For the reasons set forth herein, plaintiff's motion for a preliminary injunction is granted.

II. Background

A. Factual Background[1]

On or about July 1, 2010, plaintiff and defendants entered into a Retail Motor Fuel Outlet Lease ("the Lease"), a Dealer Contract of Sale ("the Supply Agreement") and a number of related agreements (collectively, "the Franchise Agreements"), with respect to a service station located at the subject premises. (Compl., ¶ 6). It is undisputed that the property, building and improvements at the subject premises are all owned by plaintiff. (Id.) The term of the Franchise Agreements, which provide, *inter alia*, that defendants would maintain adequate supplies of plaintiff's petroleum products, make monthly rental payments and would operate the premises as

---

[1] Since defendants failed to file an answer to the complaint, to submit any opposition to plaintiff's motion for a preliminary injunction, or to otherwise dispute plaintiff's averment of facts as set forth in the complaint during the hearings before me on November 26, 2012, January 10, 2013 and January 22, 2013, the facts are taken from the complaint and are deemed to be undisputed by defendants.

a retail motor fuel outlet twenty-four (24) hours each day, (Declaration of Steven Amato in Support of Plaintiff's Motion for Preliminary Injunction ["Amato Decl."], Ex. 1, ¶¶ 3, 4(c) and 6), was for the period beginning July 1, 2010 and ending on June 30, 2013. (Amato Decl., Exs. 1 and 2). Moreover, pursuant to the Supply Agreement, *inter alia*, defendants agreed to "exclusively purchase from, receive and to pay [plaintiff] for Gulf branded or other petroleum products of the kinds and in the quantities and under the terms and conditions specifically set forth in the Commodity Schedule(s) attached [there]to." (Amato Decl., Ex. 2).

Paragraph 8 of the Supply Agreement provides that plaintiff may terminate the Supply Agreement after written notice: (a) if defendants (i) "dispense[d] any motor fuel other than motor fuel purchased from [plaintiff]" or (ii) "fail[ed] to pay any amount when and as due;" or (b) "for any other reason allowable by law." (Amato Decl., Ex. 2). Similarly, paragraph 11 of the Lease provides, in relevant part, that plaintiff "may, at its option, terminate, cancel, or non-renew this Lease after notice to [defendants] as required by law for any one or more of the following grounds, or for any other ground permitted by law: (a) Failure by [defendants] to comply with any provision of this Lease, which provision is both reasonable and of material significance to the relationship create by this Lease; (b) Failure by [defendants] to exert good faith efforts to carry out the provisions of this Lease; (c) Occurrence of an event which is relevant to the relationship created by this Lease, and as a result of which termination, cancellation, or nonrenewal of this Lease is reasonable, including, but not limited to, events such as . . . (8) Failure by [defendants] to pay [plaintiff] in a timely manner when due rent and all other sums to which [plaintiff] is legally entitled[,] (9) Failure by [defendants] to operate the Premises for seven (7) consecutive

3

days or such lesser period which under the facts and circumstances constitutes an unreasonable period of time[,] [or] (15) "Any other acts or omissions of [defendants] which are relevant to the relationship created by this Lease." (Amata Decl., Ex. 1). Pursuant to paragraph 2 of the Lease, defendants agreed "that the breach of any of the terms or conditions of the [Supply Agreement] shall constitute a breach of th[e] Lease, and that termination of the [Supply Agreement] shall, at the option of [plaintiff], terminate th[e] Lease." (Amato Decl., Ex. 1).

On or about April 29, 2010, Halis Semerci and Haluk Semerci (collectively, "the individual defendants") entered into Continuing Guaranty Agreements ("the Guarantees") with plaintiff, pursuant to which they unconditionally guaranteed to plaintiff the full payment and performance when due of all indebtedness or other obligations of Halis Semerci and Haluk Semerci, d/b/a Semco Oil Industry, ("SOI") to plaintiff. (Amato Decl., Exs. 3 and 4).

It is undisputed that defendants have failed to purchased gasoline, pay rent, or otherwise comply with their obligations under the Franchise Agreements. (Compl., ¶ 11). By letter dated May 9, 2012, plaintiff sent a written Notice of Franchise Termination by certified mail to defendants indicating, *inter alia*, that the parties' franchise relationship was being terminated, effective August 17, 2012, based upon: (1) defendants' failure to comply with a reasonable franchise provision which is of material significance to the franchise relationship, i.e., failing to operate the subject premises as a retail motor fuel store for twenty-four (24) hours each day; (2) defendants' failure to exert good faith efforts to carry out the provisions of the franchise; and (3) the occurrence of an event which is relevant to the franchise relationship and as a result of which termination is reasonable, i.e., defendants' failure to operate the subject premises for at least

seven (7) consecutive days. (Compl., ¶ 14).

It is undisputed that despite the repeated demands of plaintiff, defendants have refused to vacate, and continue to occupy the subject premises. (Compl., ¶¶ 16, 17).

B. Procedural Background

On September 21, 2012, plaintiff Gulf filed: (1) a complaint against defendants pursuant, *inter alia*, to the PMPA and this Court's diversity jurisdiction under 28 U.S.C. § 1332(a)(2), seeking, *inter alia*, (a) judgment declaring that plaintiff is entitled (i) to terminate the parties' franchise relationship and (ii) to immediate possession, custody and control of the subject premises (first claim for relief), (b) preliminary and permanent injunctions requiring defendants to immediately (i) vacate and surrender the subject premises to plaintiff and to prevent defendants from re-entering the premises, (ii) return all of plaintiff's property and fixtures at the subject premises to plaintiff, and (iii) remove their personal property from the subject premises without harm to the subject premises (second claim for relief), and (c) to recover damages for breach of contract and breach of guaranty (third through fifth claims for relief); and (2) an application pursuant to Rule 65 of the Federal Rules of Civil Procedure seeking a preliminary injunction (a) requiring defendants (i) to immediately vacate and surrender possession of the subject premises, and all property located thereon, to plaintiff, (ii) to return all of plaintiff's equipment, fixtures and other property at the subject premises to plaintiff and (iii) to remove their personal property from the subject premises without harm to the subject premises, and (b) prohibiting defendants from reentering the subject premises. The executed summonses filed by plaintiff on October 16, 2012

indicate that defendants were served with summonses and the complaint on September 26, 2012. (Doc. No. 6).

On October 18, 2012, after defendants failed to serve and file answers to the complaint, or to otherwise appear in this action, plaintiff requested that the Clerk of the Court enter defendants' default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. Thereafter, defendants belatedly moved for an extension of time to file an answer to the complaint. (Doc. No. 9). On October 22, 2012, the Clerk of the Court entered defendants' default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. (Doc. No. 8). On October 29, 2012, plaintiff moved pursuant to Rule 55(b)(2) for the entry of a default judgment against defendants. (Doc. No. 11). At a hearing in aid of judgment held before me on November 26, 2012, at which the individual defendants appeared *pro se*, I, *inter alia*, granted defendants' motion for an extension of time to serve and file answers to the complaint; denied plaintiff's motion for the entry of a default judgment against defendants; directed that defendants serve and file any opposition to plaintiff's motion for a preliminary injunction by 10:00 a.m. on January 9, 2013; and scheduled a hearing for January 9, 2013 at 11:15 a.m. (Doc. No. 13).

On January 3, 2013, more than one (1) month after the initial hearing and less than one (1) week prior to the next hearing, defendants moved for the appointment of pro bono counsel. Defendants never filed an answer to the complaint or any opposition to plaintiff's motion for a preliminary injunction prior to the hearing scheduled for January 9, 2013. At the hearing, I, *inter alia*, denied defendants' motion for the appointment of pro bono counsel and deferred decision on plaintiff's motion for a preliminary injunction until the next hearing scheduled for January 22,

2013.

At the hearing on January 22, 2013, I, *inter alia*, granted plaintiff's motion for a preliminary injunction on the record and directed that defendants leave the subject premises by 5:00 p.m. on January 31, 2013.

III.   Discussion

   A.   Standard for Injunctive Relief

In order to obtain a preliminary injunction, a plaintiff must demonstrate: (a) that "irreparable harm is likely in the absence of an injunction," Winter v. Natural Resources Defense Council, 555 U.S. 7, 22, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008); (b) "either (1) likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief, UBS Financial Services, Inc. v. West Virginia University Hospitals, Inc, 660 F.3d 643, 648 (2d Cir. 2011) (quoting Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010) (quotations and citation omitted)); and (c) "that the public's interest weighs in favor of granting an injunction," Red Earth LLC v. U.S., 657 F.3d 138, 143 (2d Cir. 2011). See Christian Louboutin S.A. v. Yves Saint Laurent America Holdings, Inc., — F.3d —, 2012 WL 3832285, at * 4 (2d Cir. Sept. 5, 2012); Oneida Nation of New York v. Cuomo, 645 F.3d 154, 164 (2d Cir. 2011).   "A preliminary injunction is an extraordinary remedy never awarded as of right." Winter, 555 U.S. at 24, 129 S.Ct. at 376; see also UBS Financial, 660 F.3d at 648. "In each case, courts must balance the

7

competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Winter, 555 U.S. at 24, 129 S. Ct. at 376 (quotations and citation omitted).

B. Likelihood of Success

Plaintiff has established a likelihood of success on the merits of its claims pursuant to the PMPA. The PMPA prohibits a "franchisor engaged in the sale, consignment, or distribution of motor fuel in commerce * * * [from] terminat[ing] any franchise * * * prior to the conclusion of the term, or the expiration date, stated in the franchise," 15 U.S.C. § 2802(a)(1), except for a statutorily enumerated reason and after providing written notice. See Mac's Shell Service, Inc. v. Shell Oil Products Co. LLC, 559 U.S. 175, 130 S. Ct. 1251, 1257, 176 L. Ed. 2d 36 (2010); Mobil Oil Corp. v. Karbowski, 879 F.2d 1052, 1055 (2d Cir. 1989). "Congress enacted the PMPA to establish 'minimum Federal standards governing the termination and nonrenewal of franchise relationships for the sale of motor fuel by the franchisor or supplier of such fuel.'" Karbowski, 879 F.2d at 1055 (quoting S. Rep. No. 731, 95th Cong., 2d Sess. 15, reprinted in 1978 U.S. Code Cong. & Admin. News 873, 873); see also Roleco Service Stations, Inc. v. Getty Refining and Marketing Co., 839 F.2d 88, 91 (2d Cir. 1988).

As is relevant here, the PMPA permits a franchisor to terminate a franchise based upon, *inter alia*:

> "(A) A failure by the franchisee to comply with any provision of the franchise, which provision is both reasonable and of material significance to the franchise relationship, * * *[;]

8

> (B) A failure by the franchisee to exert good faith efforts to carry out the provisions of the franchise, if– (i) the franchisee was apprised by the franchisor in writing of such failure and was afforded a reasonable opportunity to exert good faith efforts to carry out such provisions; * * *[;] [or]
>
> (C) The occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise * * * is reasonable, * * *."

15 U.S.C. § 2802(b)(2). Section 2802(c) defines the term "an event which is relevant to the franchise relationship and as a result of which termination of the franchise * * * is reasonable" to include, *inter alia*, "failure by the franchisee to operate the marketing premises for – (A) 7 consecutive days, or (B) such lesser period which under the facts and circumstances constitutes an unreasonable period of time." 15 U.S.C. § 2802(c)(9). "[I]f an event falls within the enumerated list, termination is conclusively presumed to be reasonable as a matter of law." Russo v. Texaco, Inc., 808 F.2d 221, 225 (2d Cir. 1986). "Once having ascertained that an event is encompassed by one of the twelve enumerated events, a court need make no further inquiry as to the reasonableness of the termination." Id.

"In order to effect a valid termination, the franchisor must give the franchisee written notice of termination by personal delivery or certified mail, see 15 U.S.C. §§ 2804(c)(1) and (2), which must include 'a statement of intention to terminate the franchise * * *, together with the reasons therefor.'" Ceraso v. Motiva Enterprises, LLC, 326 F.3d 303, 314 (2d Cir. 2003) (quoting 15 U.S.C. § 2804(c)(3)(A) (emphasis omitted)). "There must be strict compliance with the notice provisions of the PMPA." Id. (quotations, alterations and citation omitted). "The franchisor has the burden of showing that termination was justified and properly executed." Id.

Plaintiff has established its compliance with the notice provisions of the PMPA.

Moreover, defendants' failure: (a) to make any effort to comply with the franchise provision requiring them to operate as a retail motor fuel store for twenty-four (24) hours each day and (b) to operate the subject premises for approximately twenty-five (25) consecutive days justified plaintiff's termination of the franchise agreement. See 15 U.S.C. §§ 2802(b)(2)(B) and (C) and (c); e.g. Lyons v. Mobil Oil Corp., 884 F.2d 1546, 1548-49 (2d Cir. 1989); Karbowski, 879 F.2d at 1053. Accordingly, plaintiff is entitled to terminate its franchise relationship with defendants.

### C. Irreparable Injury

Plaintiff has demonstrated that it would be irreparably harmed absent a grant of preliminary injunctive relief. An "unauthorized interference with a real property interest constitutes irreparable harm as a matter of law." Brooklyn Heights Association, Inc. v. National Park Service, 777 F. Supp. 2d 424, 435 (E.D.N.Y. 2011); see also TR Petroleum, LLC v. Sunoco, Inc. (R&M), No. 07-cv-475, 2008 WL 897702, at * 2 (E.D.N.Y. Mar. 31, 2008). Defendants' continued occupation of plaintiff's property and use of its equipment deprives plaintiff of the ability to make productive use of the subject premises, which constitutes irreparable harm. See Southland Corp. v. Froelich, 41 F. Supp. 2d 227, 243 (E.D.N.Y. 1999); Persaud v. Exxon Corp., 867 F. Supp. 128, 141 (E.D.N.Y 1994).

Moreover, "[t]he loss of good will constitutes irreparable harm * * * [and] [t]he interruption of the availability of a necessary good can negatively effect the provider's good will even if the interruption is brief." Quezada v. BP Products North America, Inc., No. 06 CV 5378, 2006 WL 3837720, at * 3 (E.D.N.Y. Dec. 1, 2006). Since, *inter alia*, plaintiff owns the subject

premises and the petroleum products defendants were supposed to sell pursuant to the Franchise Agreements, plaintiff will suffer irreparable harm if it is not permitted to take immediate possession of the subject premises. See, e.g. id.

D. Public Interest

The public interest will not be disserved by granting plaintiff a preliminary injunction. To the contrary, "the public interest is best served by enforcement of the PMPA and by the assurance that valid contracts will be enforced." Shell Oil Co. v. A.Z. Services, Inc., 990 F. Supp. 1406, 1418 (S.D. Fla. 1997). Moreover, the public interest factor weighs in favor of granting plaintiff a preliminary injunction since, *inter alia*, "the continued possession by a lessee of a property after the lease has been validly terminated is contrary to the public interest, * * * more so [when] such possession includes underground gasoline storage tanks * * * [which] require strict testing, record keeping, monitoring, and sampling * * *." Total Petroleum Puerto Rico Corp. v. Colon-Colon, 577 F. Supp. 2d 537, 552-53 (D. Puerto Rico 2008). Accordingly, plaintiff is entitled to immediate possession, custody and control of the subject premises.

III. CONCLUSION

For the foregoing reasons, plaintiff's motion for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure is granted and it is hereby,

ORDERED that defendants must vacate and surrender possession of the subject premises, and all property located thereon, to plaintiff; return all of plaintiff's equipment, fixtures and other

11

property at the subject premises to plaintiff; and remove their personal property from the subject premises without harm to the subject premises, **by 5:00 p.m. on January 31, 2013**; and it is further,

ORDERED that defendants are prohibited from reentering the subject premises absent express permission from the plaintiff after 5:00 p.m. on January 31, 2013; and it is further

ORDERED that plaintiff is directed to advise the Court in writing **on or before 4:00 p.m. on February 8, 2013**, whether it intends to pursue its remaining claims seeking damages against the defendants, or those claims will be deemed voluntarily dismissed without prejudice and this action will be closed with leave to reopen on ten (10) days notice to all parties within thirty (30) days from the date the case is closed.

SO ORDERED.

s/ Sandra J. Feuerstein

Sandra J. Feuerstein
United States District Judge

Dated: January 30, 2013
    Central Islip, New York